Singleton, Judge:
This claim was filed with this Court on September 8, 1967, placed on the hearing docket and evidence of claimant and respondent presented to the Court on May 16, 1968.
*142 Claimant operated a private dumping facility for the disposal of solid waste, garbage and trash and litter on a 38 acre tract near South Charleston, West Virginia, adjacent to State Route 12/2, during the years 1964, 1965 and until October, 1966. Claimant testified that State Road Commissioner, Burl Sawyers and other State Road officials visited him in the fall of 1964, advised him that the State Road Commission had lost certain dumping privileges at Montgomery, West Virginia, and orally contracted to use his dump for the disposal of garbage and litter for the sum of $12,000.00 per year. Claimant further testified that he volunteered that the State could dump that portion of garbage and litter picked up on Route 60 in Kanawha County, free of charge, if the State would improve the State Road (12/2) providing access to his dump. Claimants dump was also being used by commercial trash and garbage collectors, each of whom paid claimant the sum of $4.00 for each large truck load deposited on his premises.
Respondent offered the evidence of Chilton Stalnaker, Supervisor of District No. 1, State Road Commission, during 1964, who testified that claimant called him in the fall of 1964, requesting certain repairs to State Route 12/2, that his district had just lost its dumping privileges in Montgomery, for the disposal of the trash, placed in the litter barrels in the county and that in return for Stalnakers assurances of repairs and improvements to Route 12/2, claimant agreed to permit the State Road Commission trucks to dump on his premises, and that he did not anticipate that it would be more than one load a day. Stalnaker stated he had no knowledge of any other arrangements made by the Road Commission for use of the dump. Respondent further offered in evidence the dollar amounts expended by the Road Commission for maintenance (materials, labor and equipment on Route 12/2 for the years 1964 ($427.58), 1965 ($600.08), 1966 ($5.84), 1967 ($998.88), and for 1968, to the date of hearing ($0.00). Despite some confusion on the part of claimant as to the date, this Court is of the opinion that it is quite clear that the Road Commission ceased using this dump in October or November of 1966, the dump having been ordered closed by the Circuit Court of Kanawha County on application of the West Virginia Department of Health.
*143 Other witnesses for the claimant included commercial garbage haulers using his facility, and pig food scavengers, each of whom testified that they were at the dump five days a week during most of the period in question and they had personally observed State Road Commission trucks making three to five trips daily dumping garbage and trash on claimant’s premises. Claimant further testified that he covered the deposited garbage and debris with earth cover, using a bulldozer and that when he was unable to do this, he hired a man and dozer to perform this task at a cost of $150.00 per week.
Claimant asks this Court to award him the sum of $4,000.00 for the use of. his dump by the State Road Commission for the period in question, and does not pursue his claim on the alleged $12,000.00 annual oral contract set forth in his testimony.
Despite the evidentiary conflict surrounding the beginning of usage of claimants dump by the State Road Commission, the evidence is clear that it was used for a period from the fall of 1964 until on or about October of 1966. The evidence is further clear that claimant agreed to permit the State to dump free the litter barrel refuse from Route 60, in exchange for improved maintenance of State Route 12/2. His counsel argues that a pre-existing obligation in law (maintenance of State Road 12/2) is not a legal consideration for such a contract, and this is generally correct; but his counsel further stated to this Court that “of course, he made the deal and should be held to it.” In this the Court concurs, and finds that one load a day was entitled to be dumped free. By the same token, we cannot arbitrarily overlook the evidence of claimant and other witnesses to the effect that respondents trucks dumped three to five loads a day, five days a week. Considering all of the evidence, and using the lesser amounts in each instance, this Court finds that respondent did use claimants dumping facilities an average of three times per day, five days per week over an approximate twenty month period, and that one of these loads each day was considered to be free. And further considering the evidence as to claimants normal charges to others, and the evidence as to his expense in treating and covering the refuse deposited, no evidence being offered by respondent as to the prevailing rates for such services, this Court is of the opinion *144 that three dollars per load is an equitable rate for the services afforded.
It is therefore the opinion of this Court that claimant has rendered services to the State of West Virginia for which he should be compensated and that in equity and good conscience should be paid; and he is accordingly awarded the sum of $2,400.00.